## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| Atlas Global Technologies LLC, | |
| Plaintiff, | Civil Action No. 2:25-cv-00534 |
| v. | Jury Trial Demanded |
| Hewlett Packard Enterprise Company | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Atlas Global Technologies LLC ("Atlas") files this Complaint against Hewlett Packard Enterprise Company ("HPE") for infringement of U.S. Patent Nos. 9,638,310 ("the '310 patent"), 10,020,919 ("the '919 patent"), 10,348,471 ("the '471 patent"), and 10,965,425 ("the '425 patent"). The '310 patent, '919 patent, '471 patent, and '425 patent are referred to collectively as the "patents-in-suit."

## THE PARTIES

1.      Plaintiff Atlas is a limited liability company organized under the laws of Texas with its principal place of business at 3050 Tamarron Blvd., Unit 3305, Austin, TX 78746.

2.      Defendant Hewlett Packard Enterprise Company is a company organized under the laws of Delaware, USA, with its principal place of business located at 1701 East Mossy Oaks Road, Spring, TX 77389. Hewlett Packard Enterprise Company may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

3.      On information and belief, HPE is engaged in research, development, manufacturing, importation, distribution, sales, and related technical services for wireless devices,

including networking products that comply with, implement, support, or utilize the Institute of Electrical and Electronics Engineers' ("IEEE") 802.11ax™-2021 ("Wi-Fi 6") Standard and operate on Wi-Fi 6 and Wi-Fi 6E networks. HPE's networking products are used and sold in the United States, and throughout Texas, including this District.

4.      HPE's business segment, "Intelligent Edge," "offers wired and wireless local area networks, campus, branch, and data center switching, software-defined wide-area-networks, private and public cellular network software, network security, and associated services that enable secure connectivity for businesses of any size."[1] Through the Intelligent Edge business segment, HPE offers the Aruba Networking product portfolio, which includes "hardware products such as Wi-Fi access points, switches, and gateways;" software products and services including "cloud-based management, network management, network access control, software-defined wide-area networking, network security, analytics and assurance, location services software, private and public cellular core software;" "professional and support services;" and "NaaS and consumption models through the HPE GreenLake cloud."[2] Specifically, the HPE Aruba Networking product portfolio includes numerous access points that leverage Wi-Fi 6 features and functionalities.[3]

---

[1] Hewlett Packard Enterprise Company, *Form 10-K Annual Report for the Fiscal Year Ended October 31, 2024*, at 3 (December 19, 2024), available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/0001645590/000164559024000139/hpe-20241031.htm (last accessed May 8, 2025).

[2] *Id.*

[3] *See e.g.*, HPE Aruba Networking 500R Series Remote Access Points, https://buy.hpe.com/us/en/networking/wireless-devices/wlan-access-points/hpe-aruba-networking-remote-access-point-products/hpe-aruba-networking-500r-series-remote-access-points/p/1014733651 (last accessed May 6, 2025); HPE Networking Instant On Access Points AP21, https://buy.hpe.com/us/en/networking/wireless-devices/wlan-access-points/hpe-aruba-networking-small-business-access-point-products/hpe-networking-instant-on-access-points-ap21/p/1014788776?q=1014788776 (last accessed May 6, 2025).

5.      HPE maintains a substantial corporate presence in the State of Texas and this District. HPE's world-wide corporate headquarters is located at 1701 E Mossy Oaks Rd, Spring, TX 77389.[4] HPE also maintains an office at 3001 Dallas Parkway, Frisco, TX 75034, located within this District.[5] On information and belief, HPE further maintains at least 101 partners in Plano, TX and Frisco, TX for its networking products business.[6] HPE also operates and owns an online store (located at buy.hpe.com) through which HPE markets, offers, sells, offers to sell, distributes, and provides technical support for its networking products throughout the United States, the State of Texas, and this District.

6.      HPE develops, designs, manufactures, distributes, markets, offers to sell, and/or sells infringing products and services within the United States, the State of Texas, and this District, and otherwise purposefully directs infringing activities to this District in connection with its Frisco office, its buy.hpe.com website, and its other places of business in Texas and the rest of the United States.

## JURISDICTION AND VENUE

7.      This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq.* This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, *et seq.*, 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions).

---

[4] *See* Contact HPE, https://www.hpe.com/us/en/contact-hpe.html#Office (last accessed May 6, 2025).

[5] *See Id.*

[6] *See* Partner Connect, https://partnerconnect.hpe.com/partners (last accessed May 6, 2025).

8.    This Court has personal jurisdiction over HPE in accordance with due process and/or the Texas Long Arm Statute, at least because HPE does business in this State by, among other things, "recruit[ing] Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." TEX. CIV. PRAC. & REM. CODE § 17.042(3). For instance, HPE has multiple job openings as of May 6, 2025.[7]



---

[7] https://careers.hpe.com/us/en/search-results?s=1 (last accessed May 6, 2025); https://www.linkedin.com/jobs/search/?currentJobId=4221103621&f_C=1025%2C162533&geoId=102748797&origin=JOB_SEARCH_PAGE_LOCATION_AUTOCOMPLETE&refresh=true (last accessed May 6, 2025).



9.     Furthermore, according to its LinkedIn page, HPE has over 482 employees in Frisco and Plano, including 91 in engineering positions and 145 in information technology positions:[8]

---



10.    HPE also maintains over 101 partners for its networking products business in Frisco and Plano, according to HPE's website.[9]



[9] https://partnerconnect.hpe.com/partners (last accessed May 6, 2025).

11.     This Court also has personal jurisdiction over HPE because HPE has engaged, and continues to engage, in continuous, systematic, and substantial activities within this State, including the significant marketing and sale of products within this State and this District. Furthermore, upon information and belief, this Court has personal jurisdiction over HPE because HPE has committed acts giving rise to Atlas's claims for patent infringement within and directed to this District and has derived substantial revenue from its goods and services provided to individuals and entities in this State and this District.

12.     HPE is also subject to personal jurisdiction in this Court because, *inter alia*, it maintains a regular and established place of business in this District, including at least its brick-and-mortar location at 3001 Dallas Parkway, Frisco, TX 75034.[10]



Additionally, according to the Collin County Central Appraisal District (CAD) website, HPE owns another place of business in this District located at 2300 Chelsea Blvd, Allen, TX 75013.[11]

---

[10] https://www.hpe.com/us/en/contact-hpe.html (last accessed May 6, 2025).

[11] https://esearch.collincad.org/ (last accessed May 6, 2025).



13. Relative to patent infringement, HPE has committed and continues to commit acts in violation of 35 U.S.C. § 271, and has made, used, offered for sale, and/or sold infringing products, systems, and/or services in this State, including this District, and has otherwise engaged in infringing conduct within and directed at, or from, this District. Such infringing products, systems, and/or services (collectively, the "Accused Instrumentalities") include any and all HPE's networking products and services that comply with, implement, support, or utilize the Wi-Fi 6 Standard. The Accused Instrumentalities have been and continue to be distributed to this District at least through HPE's buy.hpe.com website. HPE's infringing activities have caused harm to Atlas in this District. HPE offers to sell, and sells, the Accused Instrumentalities to customers within this District, and, on information and belief, HPE and/or its customers use the Accused Instrumentalities in this District in an infringing manner.

14. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because HPE has a regular and established place of business in at least Frisco, TX, which is in this District. Venue is further proper in this District because HPE has directly infringed and/or induced the infringement of others, including its customers, in this District.

8

## THE 802.11 STANDARD

15.      Wireless Local Area Networks (WLANs) have become ubiquitous with the rise of mobile telecommunication devices. These wireless networks operate using an unlicensed band of 2.4 GHz, 5 GHz, and/or 6 GHz. The operation of WLANs is standardized by the Institute of Electrical and Electronics Engineers ("IEEE") Part 11 under the name of "Wireless LAN Medium Access Control (MAC) and Physical Layer (PHY) Specifications," also known as "Wi-Fi."

16.      After an original Wi-Fi standard was published in 1999, new standard versions have been published by amendments. For example, the IEEE standard 802.11a (IEEE Std 802.11a-1999) was published in 1999, the IEEE standard 802.11b (IEEE Std 802.11b-1999) was published in 1999, and the IEEE standard 802.11g (IEEE Std 802.11g-2003) was published in 2003. Subsequently, the IEEE standard 802.11n (IEEE Std 802.11n-2009) for enhancements for higher throughput (HT) was published in 2009, and the IEEE standard 802.11 ac (IEEE 802.11 ac2013) for enhancements for very high throughput (VHT) was published in 2013. These prior versions of the 802.11 standard are called legacy standards.

17.      As wireless devices proliferated, the need arose to improve the performance of Wi-Fi in high-density scenarios. To address this issue, an IEEE task group began working on a new standard high efficiency (HE) WLAN to enhance the throughput-per-area of Wi-Fi. This standard became known as 802.11ax, commonly called "Wi-Fi 6." The first draft of the 802.11ax Standard was published in March 2016. The IEEE approved the final version of the 802.11ax2021 Standard on February 9, 2021.

18.      Wi-Fi 6 provides numerous benefits over previous Wi-Fi standards, which the industry has recognized and actively promoted. For example, Qualcomm has stated that Wi-Fi 6 provides "up to 4x increase in capacity," "higher efficiency," and "improved coverage &

performance" over previous Wi-Fi standards.[12] Intel has stated that Wi-Fi 6 offers 9.6 Gbps of maximum throughput, whereas Wi-Fi 5 offers a maximum throughput of 3.5 Gbps.[13] Intel has also stated that Wi-Fi 6 can result in up to 75% less latency.[14] Cisco has stated that Wi-Fi 6 "lets access points support more clients in dense environments and provide[s] a better experience for typical wireless LAN networks."[15] Broadcom has stated that Wi-Fi 6 will allow devices to "work 6X faster," "deliver up to 7X better battery life," and "expand the Wi-Fi range up to 4X."[16] According to Broadcom, the advantages of Wi-F6 relative to prior versions of the Standard, includes "[improving] user experience in dense environments by maximizing average speeds for a large number of devices while preserving the benefits of legacy Wi-Fi technologies, such as backwards compatibility and low cost."[17] Also according to Broadcom, Wi-Fi 6 achieves these advancements through various primary features, including Orthogonal Frequency Division Multiplexing Multiple Access (OFDMA), which increases spectrum capacity by slicing channels into smaller chunks, which together host multiple devices simultaneously; Multi-User MIMO (MU-MIMO) technology to increase channel capacity when simultaneously servicing multiple devices using the same frequency chunks; and smarter access points capable of providing improved outdoor connectivity

---

[12] https://www.qualcomm.com/media/documents/files/802-11ax-wi-fi-with-unprecedented-capacity.pdf (last accessed May 6, 2025).

[13] https://www.intel.com/content/www/us/en/gaming/resources/wifi-6.html (last accessed May 6, 2025).

[14] *Id.*

[15] https://www.cisco.com/c/en/us/products/collateral/wireless/white-paper-c11-740788.html. (last accessed May 6, 2025).

[16] https://docs.broadcom.com/doc/80211ax-WP (last accessed May 6, 2025).

[17] *Id.*

through longer guard intervals.[18] Among the various improvements obtained from Wi-Fi 6, outdoor devices that implement Wi-Fi 6 can obtain increased throughput of 50% relative to prior versions of the Standard.[19]

19.    HPE advertises the benefits and advantages of Wi-Fi 6 to its customers in promoting the Accused Instrumentalities. According to HPE, "Wi-Fi 6 is designed to improve efficiency with up to 4x faster speeds and more capacity than Wi-Fi 5 (802.11ac)."[20] HPE explains that Wi-Fi 6 "provides increased speed, flexibility, and scalability to support growth in the number of IoT and client devices, increased use of cloud, and digital transformation initiatives," and that it "enables IT to keep pace with increased demand for Wi-Fi leveraging the same 2.4 GHz and 5 GHz bands as Wi-Fi 5."[21] HPE identifies key benefits of Wi-Fi 6 to include "[h]igher data rates with 1024 QAM, [i]ncreased capacity, [i]mproved performance in environments with many connected devices, [i]mproved power efficiency, [and] [e]nhanced support for IoT devices."[22] HPE additionally provides that Wi-Fi 6 features include "Orthogonal frequency division multiple access (OFDMA)" which "effectively shares channels to increase network efficiency," and "Multi-user multiple input, multiple output (multi-user MIMO) [to allow] more downlink data to be transferred

---

[18] *Id.*

[19] *Id.*

[20] https://www.hpe.com/us/en/what-is/wi-fi-6.html (last accessed May 6, 2025).

[21] *Id.*

[22] *Id.*

at one time, enabling access points (APs) to concurrently handle more devices."[23] HPE touts these benefits to users looking for a new device.[24]

## **NEWRACOM**

20.    The patents-in-suit were invented and developed by engineers at Newracom, a pioneer and leader in wireless communications technology. Newracom was founded in 2014 by a group of 28 former employees of the Electronics & Telecommunications Research Institute ("ETRI"), a research institution funded by the government of Korea.

21.    Newracom was a major contributor to the 802.11ax-2021 Standard, providing numerous technical contributions to that Standard which have proven to be highly beneficial in improving the bandwidth of wireless transmissions, while minimizing latency among the devices connected to the wireless local area network. Notably, Newracom has been acknowledged as one of the leaders in both number of technical submissions and the number of submissions ultimately adopted by the 802.11ax Task Group. According to an IAM Industry Report dated April 25, 2018, Newracom was recognized as the world's fourth most active technical contributor to the 802.11ax Standard, behind only Qualcomm, Intel, and Huawei.[25] The contributions provided by Newracom have led to over 188 United States patents relating to the 802.11ax Standard.

---

[23] *Id.*

[24] *See*, *e.g.*, HPE Networking Instant On Access Points AP21, https://buy.hpe.com/us/en/networking/wireless-devices/wlan-access-points/hpe-aruba-networking-small-business-access-point-products/hpe-networking-instant-on-access-points-ap21/p/1014788776?q=1014788776 (last accessed May 6, 2025) (advertising that the AP21 Access Points are "Wi-Fi CERTIFIED 6[TM]").

[25] *See* https://www.iam-media.com/ieees-empirical-record-success-and-innovation-following-patent-policy-updates (last accessed May 6, 2025).

## THE PATENTS-IN-SUIT

22.     Atlas is the sole and exclusive owner of all right, title, and interest in the '310 patent, the '919 patent, the '471 patent, and '425 patent, and holds the exclusive right to take all actions necessary to enforce its rights in and to the patents-in-suit, including the filing of this patent infringement lawsuit. Atlas also has the right to recover all damages for past, present, and future infringements of the patents-in-suit and to seek injunctive relief as appropriate under the law.

23.     The '310 patent is entitled "Long Training Field Sequence Construction." The '310 patent lawfully issued on April 18, 2017, and stems from U.S. Patent Application No. 15/079,007 filed on March 23, 2016. The '310 patent claims priority to U.S. Provisional Application No. 62/138,302, filed on March 25, 2015; U.S. Provisional Application No. 62/157,849, filed on May 6, 2015; U.S. Provisional Application No. 62/214,139, filed on September 3, 2015; U.S. Provisional Application No. 62/214,156, filed on September 3, 2015; U.S. Provisional Application No. 62/236,815, filed on October 2, 2015; U.S. Provisional Application No. 62/250,944, filed on Nov. 4, 2015; and U.S. Provisional Application No. 62/264, 812, filed on Dec. 8, 2015. A copy of the '310 patent is attached hereto as Ex. 1.

24.     The '919 patent is entitled "Protection Methods for Wireless Transmissions." The '919 patent lawfully issued on July 10, 2018, and stems from U.S. Patent Application No. 15/497,094, filed on April 25, 2017, which was a continuation of U.S. Patent Application No. 15/291,947, filed on October 12, 2016. The '919 patent also claims priority to U.S. Provisional Application No. 62/333,192, filed on May 7, 2016; U.S. Provisional Application No. 62/333,077, filed on May 6, 2016; U.S. Provisional Application No. 62/331,380, filed on May 3, 2016; and U.S. Provisional Application No. 62/240,419, filed on October 12, 2015. A copy of the '919 patent is attached hereto as Ex. 2.

25.     The '471 patent is entitled "Control Information for Multi-User Transmissions in WLAN Systems." The '471 patent lawfully issued on July 9, 2019, and stems from U.S. Application No. 15/231,638 filed on August 8, 2016. The '471 patent claims priority to U.S. Provisional Application No. 62/202,756, filed on August 7, 2015; U.S. Provisional Application No. 62/202,758, filed on August 7, 2015; U.S. Provisional Application No. 62/234,567, filed on September 29, 2015; and U.S. Provisional Application No. 62/347,021, filed on June 7, 2016. A copy of the '471 patent is attached hereto as Ex. 3.

26.     The '425 patent is entitled "Control Information for Multi-User Transmissions in WLAN Systems." The '425 patent lawfully issued on March 30, 2021, and stems from U.S. Patent Application No. 16/449,245 filed on July 21, 2019, which was a continuation of U.S. Patent Application No. 15/231,638, filed on August 8, 2016. The '425 patent claims priority to U.S. Provisional Application No. 62/202,756, filed on August 7, 2015; U.S. Provisional Application No. 62/202,758, filed on August 7, 2015; U.S. Provisional Application No. 62/234,567, filed on September 29, 2015; and U.S. Provisional Application No. 62/347,021, filed on June 7, 2016. A copy of the '425 patent is attached hereto as Ex. 4.

27.     The claims of the patents-in-suit are directed to patent-eligible subject matter under 35 U.S.C. § 101. They are not directed to abstract ideas, and the technologies covered by the claims comprises systems and/or consist of ordered combination of features and functions that, at the time of the invention, were not, alone or in combination, well-understood, routine, or conventional.

## HPE's KNOWLEDGE OF THE PATENTS-IN-SUIT

28.     On information and belief, HPE has had knowledge of the patents-in-suit since at least June 8, 2021, when Craig Yudell, President of Atlas, sent two letters to HPE. One letter was

sent to Partha Narasimhan, the Chief Technology Officer (CTO) of Aruba Networks in 2021.[26] *See* Ex. 5. On information and belief, Aruba Networks is, or was, a wholly owned subsidiary of HPE.[27] The second letter was sent to Keerti Melkote, the CEO of Aruba Networks and President of HPE's Intelligent Edge business segment in 2021.[28] *See* Ex. 6 The two June 8, 2021 letters presented HPE with "an opportunity for [HPE] to license Standard Essential Patents (SEP) in Wi-Fi 6 – the latest generation of Wi-Fi technology." Exs. 5 and 6. The letters further informed HPE that the patents-in-suit "cover[] key improvements in Wi-Fi developed by Newracom's R&D team and adopted in the IEEE 802.11ax standard." *Id.* HPE ignored Atlas's attempts to open a licensing dialogue.

29.     In addition, and at minimum, HPE was aware of the patents-in-suit as of the date of filing of this Complaint.

## THE ACCUSED INSTRUMENTALITIES

30.     HPE makes, uses, sells, offers to sell, and/or imports into the United States and this District the Accused Instrumentalities, which include any and all of HPE's networking products and services that comply with, implement, support, or utilize the Wi-Fi 6 Standard. For example, HPE makes, uses, and sells access points ("APs") that comply with, implement, support, or utilize

---

[26] https://www.linkedin.com/in/partha-narasimhan-2b14592 (last accessed May 6, 2025).

[27] *See* Hewlett Packard Enterprise Company, *Form 10-K Annual Report for the Fiscal Year Ended October 31, 2023*, at Ex. 21 (December 22, 2023), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001645590/000164559023000117/hpe-20231031.htm (last accessed May 8, 2025); *see also* Hewlett Packard Enterprise Company, *Form 10-K Annual Report for the Fiscal Year Ended October 31, 2015*, at 24 (December 17, 2015), available at https://www.sec.gov/Archives/edgar/data/1645590/000104746915009279/a2226746z10-k.htm (last accessed May 8, 2025) ("in May 2015, [HPE] acquired Aruba Networks").

[28] https://www.linkedin.com/in/keertimelkote/ (last accessed May 6, 2025).

the Wi-Fi 6 Standard. The Accused Instrumentalities implement the inventions claimed in the patents-in-suit; the portions of the Wi-Fi 6 standard covered by the patents-in-suit are mandatory, and practicing those portions of the Wi-Fi 6 standard will necessarily infringe the claims of the patents-in-suit.

31.    The Accused Instrumentalities include all HPE networking products and services that comply with, implement, support, or utilize the Wi-Fi 6 Standard. Non-limiting examples include the following HPE products:

| HPE Products | |
|---|---|
| 500 Series Campus Access Points | 500H Series Unified Hospitality Access Points |
| 500R Series Remote Access Points | 503 Series Campus Access Points |
| 510 Series Campus Access Points | 518 Series Hardened Access Points |
| 530 Series Campus Access Points | 550 Series Campus Access Points |
| 560 Series Outdoor Access Points | 560EX Series Hazardous Location Access Points |
| 570 Series Outdoor Access Points | 570EX Series Hazardous Location Access Points |
| 580 Series Outdoor Access Points | 580EX Series Hazardous Location Access Points |
| 600H Series Hospitality Access Points | 600R Series Remote Access Points |
| 610 Series Campus Access Points | 630 Series Campus Access Points |
| 650 Series Campus Access Points | 670 Series Outdoor Access Points |
| Instant On Access Points AP21 | Instant On Access Points AP22 |
| Instant On Access Points AP22D | Instant On Access Points AP25 |
| Instant On Access Points AP27 | Instant On Access Points AP32 |

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 9,628,310

32.    This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

33.     Atlas is the owner of the '310 patent with all substantial rights to the '310 patent, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

34.     The '310 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

***Direct Infringement (35 U.S.C. § 271(a))***

35.     HPE has directly infringed and continues to directly infringe one or more claims of the '310 patent in this District and elsewhere in Texas and the United States.

36.     HPE has infringed and continues to infringe, either by itself or via an agent, at least claims 1, 15, and 19 of the '310 patent by, among other things, making, offering to sell, selling, importing, testing, and/or using the Accused Instrumentalities. Furthermore, to the extent that HPE makes or sells the Accused Instrumentalities outside of the United States, it, on information and belief, delivers the Accused Instrumentalities to its customers, distributors, and/or subsidiaries in the United States; or, in the case that it delivers the Accused Instrumentalities outside of the United States, it does so intending or knowing that those products are destined for the United States or designed and designated for sale in the United States, thereby directly infringing the '310 patent. *See, e.g.*, *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

37.     Attached hereto as Ex. 7, and incorporated herein by reference, is an exemplary claim chart detailing how HPE infringes the '310 patent.

38.     HPE is liable for its infringements of the '310 patent pursuant to 35 U.S.C. § 271.

*Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

39.    In addition and/or in the alternative to its direct infringements, HPE has indirectly infringed and continues to indirectly infringe one or more claims of the '310 patent by knowingly and intentionally inducing others, including its subsidiaries, distributors, affiliates, retailers, suppliers, importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling, and/or, importing into the United States the Accused Instrumentalities.

40.    HPE has had knowledge of the '310 patent since at least June 8, 2021, when Atlas contacted HPE offering an opportunity to negotiate a broad license to Atlas's patent portfolio that includes the '310 patent. At a minimum, HPE has had knowledge of the '310 patent since being served with this Complaint. Since receiving notice of its infringements, HPE has actively induced, and continues to actively induce, the direct infringements of its subsidiaries, distributors, affiliates, retailers, suppliers, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '310 patent. Indeed, HPE has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Instrumentalities, including, for example, advertising to its customers that it sells products that comply with the Wi-Fi 6 Standard;[29] creating and/or maintaining established distribution channels for the Accused Instrumentalities into and

---

[29] *See, e.g.*, HPE Networking Instant On Access Points AP21, https://buy.hpe.com/us/en/networking/wireless-devices/wlan-access-points/hpe-aruba-networking-small-business-access-point-products/hpe-networking-instant-on-access-points-ap21/p/1014788776?q=1014788776 (last accessed May 6, 2025) (advertising that the AP21 Access Points are "Wi-Fi CERTIFIED 6[TM]").

within the United States; manufacturing the Accused Instrumentalities in conformity with U.S. laws and regulations; providing technical documentation and tools for the Accused Instrumentalities that, among other things, instruct its customers to connect the Accused Instrumentalities to Wi-Fi networks to practice the Wi-Fi 6 Standard;[30] and incorporating into the Accused Instrumentalities instructions in the form executable code or logic that causes performance of claimed inventions. By providing such instructions and support, HPE know (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '310 patent.

***Damages***

41.    Atlas has been damaged as a result of HPE's infringing conduct described in this Count. HPE is, thus, liable to Atlas in an amount that adequately compensates it for HPE's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

42.    On information and belief, despite having knowledge of the '310 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '310 patent, HPE has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. HPE's infringing activities relative to the '310 patent have been, and continue to be, willful, wanton, and deliberate in disregard of Atlas's rights with respect to the '310 patent, justifying enhanced damages under 35 U.S.C. § 284.

---

[30] *See*, *e.g.*, https://support.hpe.com/connect/s/product?language=en_US&kmpmoid=1012015121&tab=manuals&cep=on (last accessed May 7, 2025) (providing manuals, knowledge articles, and other technical support documents for HPE Aruba Networking 500 Series Campus Access Points).

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 10,020,919

43.    This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

44.    Atlas is the owner of the '919 patent with all substantial rights to the '919 patent, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

45.    The '919 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

*Direct Infringement (35 U.S.C. § 271(a))*

46.    HPE has directly infringed and continues to directly infringe one or more claims of the '919 patent in this District and elsewhere in Texas and the United States.

47.    HPE has infringed and continues to infringe, either by itself or via an agent, at least claims 1 and 11 of the '919 patent by, among other things, testing and/or using the Accused Instrumentalities within the United States.

48.    Attached hereto as Ex. 8, and incorporated herein by reference, is an exemplary claim chart detailing how HPE infringes the '919 patent.

49.    HPE is liable for its infringements of the '919 patent pursuant to 35 U.S.C. § 271.

*Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

50.    In addition and/or in the alternative to its direct infringement, HPE has indirectly infringed and continues to indirectly infringe one or more claims of the '919 patent by knowingly and intentionally inducing others, including its subsidiaries, distributors, affiliates, retailers, suppliers, importers, customers, and/or consumers, to directly infringe by using the Accused Instrumentalities in the United States.

51.     HPE has had knowledge of the '919 patent since at least June 8, 2021, when Atlas contacted HPE offering an opportunity to negotiate a broad license to Atlas's patent portfolio that includes the '919 patent. At a minimum, HPE has had knowledge of the '919 patent since being served with this Complaint. Since receiving notice of its infringements, HPE has actively induced, and continues to actively induce, the direct infringements of its subsidiaries, distributors, affiliates, retailers, suppliers, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '919 patent. Indeed, HPE has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Instrumentalities; advertising to its customers that it sells products that comply with the Wi-Fi 6 Standard;[31] creating and/or maintaining established distribution channels for the Accused Instrumentalities into and within the United States; manufacturing the Accused Instrumentalities in conformity with U.S. laws and regulations; providing technical documentation and tools for the Accused Instrumentalities that, among other things, instruct its customers to connect the Accused Instrumentalities to Wi-Fi networks to practice the Wi-Fi 6 Standard;[32] and incorporating into the Accused Instrumentalities

---

[31] *See*, *e.g.*, HPE Networking Instant On Access Points AP21, https://buy.hpe.com/us/en/networking/wireless-devices/wlan-access-points/hpe-aruba-networking-small-business-access-point-products/hpe-networking-instant-on-access-points-ap21/p/1014788776?q=1014788776 (last accessed May 6, 2025) (advertising that the AP21 Access Points are "Wi-Fi CERTIFIED 6™").

[32] *See*, *e.g.*, https://support.hpe.com/connect/s/product?language=en_US&kmpmoid=1012015121&tab=manuals&cep=on (last accessed May 7, 2025) (providing manuals, knowledge articles, and other technical support documents for HPE Aruba Networking 500 Series Campus Access Points).

instructions in the form executable code or logic that causes performance of claimed inventions. By providing such instructions and support, HPE know (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '919 patent.

***Damages***

52.    Atlas has been damaged as a result of HPE's infringing conduct described in this Count. HPE is, thus, liable to Atlas in an amount that adequately compensates it for HPE's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

53.    On information and belief, despite having knowledge of the '919 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '919 patent, HPE has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. HPE's infringing activities relative to the '919 patent have been, and continue to be, willful, wanton, and deliberate in disregard of Atlas's rights with respect to the '919 patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 10,348,471

54.    This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

55.    Atlas is the owner of the '471 patent with all substantial rights to the '471 patent, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

56.    The '471 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

*Direct Infringement (35 U.S.C. § 271(a))*

57.    HPE has directly infringed and continues to directly infringe one or more claims of the '471 patent in this District and elsewhere in Texas and the United States.

58.    HPE has infringed and continues to infringe, either by itself or via an agent, at least claims 1, 14, and 16 of the '471 patent by, among other things, making, offering to sell, selling, importing, testing, and/or using the Accused Instrumentalities. Furthermore, to the extent that HPE makes or sells the Accused Instrumentalities outside of the United States, it, on information and belief, delivers the Accused Instrumentalities to its customers, distributors, and/or subsidiaries in the United States; or, in the case that it delivers the Accused Instrumentalities outside of the United States, it does so intending or knowing that those products are destined for the United States or designed and designated for sale in the United States, thereby directly infringing the '310 patent. *See*, *e.g.*, *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

59.    Attached hereto as Ex. 9, and incorporated herein by reference, is an exemplary claim chart detailing how HPE infringes the '471 patent.

60.    HPE is liable for its infringements of the '471 patent pursuant to 35 U.S.C. § 271.

*Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

61.    In addition and/or in the alternative to its direct infringement, HPE has indirectly infringed and continues to indirectly infringe one or more claims of the '471 patent by knowingly and intentionally inducing others, including its subsidiaries, distributors, affiliates, retailers, suppliers, importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling, and/or importing into the United States the Accused Instrumentalities.

62.    HPE has had knowledge of the '471 patent since at least June 8, 2021, when Atlas contacted HPE offering an opportunity to negotiate a broad license to Atlas's patent portfolio that includes the '471 patent. At a minimum, HPE has had knowledge of the '471 patent since being served with this Complaint. Since receiving notice of its infringements, HPE has actively induced, and continues to actively induce, the direct infringements of its subsidiaries, distributors, affiliates, retailers, suppliers, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '471 patent. Indeed, HPE has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Instrumentalities; advertising to its customers that it sells products that comply with the Wi-Fi 6 Standard;[33] creating and/or maintaining established distribution channels for the Accused Instrumentalities into and within the United States; manufacturing the Accused Instrumentalities in conformity with U.S. laws and regulations; providing technical documentation and tools for the Accused Instrumentalities that, among other things, instruct its customers to connect the Accused Instrumentalities to Wi-Fi networks to practice the Wi-Fi 6 Standard;[34] and incorporating into the Accused Instrumentalities

---

[33] *See*, *e.g.*, HPE Networking Instant On Access Points AP21, https://buy.hpe.com/us/en/networking/wireless-devices/wlan-access-points/hpe-aruba-networking-small-business-access-point-products/hpe-networking-instant-on-access-points-ap21/p/1014788776?q=1014788776 (last accessed May 6, 2025) (advertising that the AP21 Access Points are "Wi-Fi CERTIFIED 6™").

[34] *See*, *e.g.*, https://support.hpe.com/connect/s/product?language=en_US&kmpmoid=1012015121&tab=manuals&cep=on (last accessed May 7, 2025) (providing manuals, knowledge articles, and other technical support documents for HPE Aruba Networking 500 Series Campus Access Points).

instructions in the form executable code or logic that causes performance of claimed inventions. By providing such instructions and support, HPE know (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '471 patent.

***Damages***

63.    Atlas has been damaged as a result of HPE's infringing conduct described in this Count. HPE is, thus, liable to Atlas in an amount that adequately compensates it for HPE's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

64.    On information and belief, despite having knowledge of the '471 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '471 patent, HPE has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. HPE's infringing activities relative to the '471 patent have been, and continue to be, willful, wanton, and deliberate in disregard of Atlas's rights with respect to the '471 patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 10,965,425

65.    This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

66.    Atlas is the owner of the '425 patent with all substantial rights to the '425 patent, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

67.    The '425 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

***Direct Infringement (35 U.S.C. § 271(a))***

68.    HPE has directly infringed and continues to directly infringe one or more claims of the '425 patent in this District and elsewhere in Texas and the United States.

69.    HPE has infringed and continues to infringe, either by itself or via an agent, at least claims 1, 8, and 15 of the '425 patent by, among other things, making, offering to sell, selling, importing, testing, and/or using the Accused Instrumentalities. Furthermore, to the extent that HPE makes or sells the Accused Instrumentalities outside of the United States, it, on information and belief, delivers the Accused Instrumentalities to its customers, distributors, and/or subsidiaries in the United States; or, in the case that it delivers the Accused Instrumentalities outside of the United States, it does so intending or knowing that those products are destined for the United States or designed and designated for sale in the United States, thereby directly infringing the '310 patent. *See*, *e.g.*, *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

70.    Attached hereto as Ex. 10, and incorporated herein by reference, is an exemplary claim chart detailing how HPE infringes the '425 patent.

71.    HPE is liable for its infringements of the '425 patent pursuant to 35 U.S.C. § 271.

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

72.    In addition and/or in the alternative to its direct infringement, HPE has indirectly infringed and continues to indirectly infringe one or more claims of the '425 patent by knowingly and intentionally inducing others, including its subsidiaries, distributors, affiliates, retailers, suppliers, importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling and/or importing into the United States the Accused Instrumentalities.

73.    HPE has had knowledge of the '425 patent since at least June 8, 2021, when Atlas contacted HPE offering an opportunity to negotiate a broad license to Atlas's patent portfolio that includes the '425 patent. At a minimum, HPE has had knowledge of the '425 patent since being served with this Complaint. Since receiving notice of its infringements, HPE has actively induced, and continues to actively induce, the direct infringements of its subsidiaries, distributors, affiliates, retailers, suppliers, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '425 patent. Indeed, HPE has intended to cause, continues to intend to cause, and has taken, and continues to take affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Instrumentalities; advertising to its customers that it sells products that comply with the Wi-Fi 6 Standard;[35] creating and/or maintaining established distribution channels for the Accused Instrumentalities into and within the United States; manufacturing the Accused Instrumentalities in conformity with U.S. laws and regulations; providing technical documentation and tools for the Accused Instrumentalities that, among other things, instruct its customers to connect the Accused Instrumentalities to Wi-Fi networks to practice the Wi-Fi 6 Standard;[36] and incorporating into the Accused Instrumentalities

---

[35] See, e.g., HPE Networking Instant On Access Points AP21, https://buy.hpe.com/us/en/networking/wireless-devices/wlan-access-points/hpe-aruba-networking-small-business-access-point-products/hpe-networking-instant-on-access-points-ap21/p/1014788776?q=1014788776 (last accessed May 6, 2025) (advertising that the AP21 Access Points are "Wi-Fi CERTIFIED 6$^{TM}$").

[36] See, e.g., https://support.hpe.com/connect/s/product?language=en_US&kmpmoid=1012015121&tab=manuals&cep=on (last accessed May 7, 2025) (providing manuals, knowledge articles, and other technical support documents for HPE Aruba Networking 500 Series Campus Access Points).

instructions in the form executable code or logic that causes performance of claimed inventions. By providing such instructions and support, HPE know (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '425 patent.

***Damages***

74.    Atlas has been damaged as a result of HPE's infringing conduct described in this Count. HPE is thus liable to Atlas in an amount that adequately compensates it for HPE's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

75.    On information and belief, despite having knowledge of the '425 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '425 patent, HPE has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. HPE's infringing activities relative to the '425 patent have been, and continue to be, willful, wanton, and deliberate in disregard of Atlas's rights with respect to the '425 patent, justifying enhanced damages under 35 U.S.C. § 284.

## CONCLUSION

76.    Atlas is entitled to recover from HPE the damages sustained by Atlas as a result of HPE's wrongful acts and willful infringements in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

77.    Atlas has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and, in such case, Atlas is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## DEMAND FOR A JURY TRIAL

78.    Atlas hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Atlas respectfully requests that this Court enter judgment in its favor and grant the following relief:

(i)     Judgment and Order that HPE has directly and/or indirectly infringed one or more claims of each of the patents-in-suit;

(ii)    Judgment and Order that HPE must pay Atlas past and future damages under 35 U.S.C. § 284, including supplemental damages arising from any continuing, post-verdict infringement for the time between trial and entry of the final judgment, together with an accounting, as needed, as provided under 35 U.S.C. § 284;

(iii)   Judgment and Order that HPE must pay Atlas reasonable ongoing royalties on a go-forward basis after Final Judgment;

(iv)    Judgment and Order that HPE's infringement of the patents-in-suit have been willful from the time that HPE became aware of the infringing nature of its products, and that the Court award treble damages pursuant to 35 U.S.C. § 284;

(v)     Judgment and Order that HPE must pay Atlas pre-judgment and post-judgment interest on the damages award;

(vi)    Judgment and Order that HPE must pay Atlas's costs;

(vii)   Judgment and Order that the Court find this case exceptional under the provisions of 35 U.S.C. § 285 and, accordingly, order HPE to pay Atlas's attorneys' fees; and

(viii)  Such other and further relief as the Court may deem just and proper.

Dated: May 16, 2025

Respectfully submitted,

/s/*Edward R. Nelson III*

EDWARD R. NELSON III
State Bar No. 00797142
ed@nelbum.com
BRENT N. BUMGARDNER
State Bar No. 00795272
brent@nelbum.com
CHRISTOPHER G. GRANAGHAN
State Bar No. 24078585
chris@nelbum.com
JOHN P. MURPHY
State Bar No. 24056024
murphy@nelbum.com
CARDER W. BROOKS
State Bar No. 24105536
carder@nelbum.com
JINMING ZHANG
Virginia Bar No. 96210
jinming@nelbum.com
**NELSON BUMGARDNER CONROY PC**
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111

**COUNSEL FOR PLAINTIFF
ATLAS GLOBAL TECHNOLOGIES
LLC**